I dissent from the affirmance of the trial court's judgment. The evidence adduced at trial was not sufficient to support the trial court's giving the spoliation-of-evidence instruction with regard to the destruction of the surge arrester; thus, the trial court erred by giving that instruction to the jury over the timely objection of Alabama Power Company ("APCo"). That error prejudiced APCo and entitled it to a new trial. Accordingly, I would reverse the judgment and remand the case for further proceedings.
"`A party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for the granting of a new trial.'" Cain v. MortgageRealty Co., 723 So.2d 631, 633 (Ala. 1998) (quoting Nunn v.Whitworth, 545 So.2d 766, 767 (Ala. 1989). "`Reversal is warranted only when the error is considered to be prejudicial.'"Id. (quoting King v. W.A. Brown Sons, Inc., 585 So.2d 10, 12
(Ala. 1991)).
It long has been the rule that for the spoliation-of-evidence doctrine to apply, there must be proof of a party's purposeful and wrongful attempted or actual destruction of, tampering with, or suppression of material evidence. See McCleery v. McCleery,200 Ala. 4, 5, 75 So. 316, 318 (1917) (the spoliation-of-evidence doctrine was applicable where there was evidence tending to show that the defendant "had purposefully destroyed the [evidence] or had intentionally caused its destruction"); Buzbee v. AlabamaWaste Services, Inc., 709 So.2d 61, 66 (Ala.Civ.App. 1998) ("As noted by the trial court, `the doctrine of spoliation requires an active attempt to suppress or [to] destroy evidence. No *Page 502 
such evidence exists in this case.'") (alteration in original) (citingChristian v. Kenneth Chandler Constr. Co., 658 So.2d 408 (Ala. 1995)); accord Vick v. Texas Employment Comm'n, 514 F.2d 734, 737
(5th Cir. 1975) ("The adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. `Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.'") (citation omitted); see also Charles W. Gamble, McElroy's Alabama Evidence § 190.05 (5th ed. 1996) ("Proof may be made that a party purposely and wrongfully destroyed a document which such party knew was supportive of an opponent's interest whether or not an action involving such interest was pending at the time of the destruction."); 29 Am. Jur. 2d Evidence § 244 (1994) ("It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable. Such a presumption or inference arises, however, only where the act was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). While the Murrays presented evidence tending to show that APCo employees accidentally or negligently destroyed the surge arrester while attempting to remove it, the Murrays presented no evidence tending to show that APCo purposely or intentionally destroyed the surge arrester to prevent it from being used as evidence against APCo.[1]
Moreover, the spoliation-of-evidence doctrine does not apply where the fact sought to be proved is proved by evidence other than the destroyed evidence. See Christian v. Kenneth ChandlerConstr. Co., 658 So.2d 408, 412-13 (Ala. 1995). In Christian, several party guests sued their hosts, Kenneth and Lee Chandler, for damages based on injuries they sustained at the Chandlers' home when a wooden deck the guests were standing on suddenly collapsed. The guests asserted claims of negligence, wantonness, and "spoliation of evidence." The morning after the deck collapsed, Kenneth Chandler photographed and videotaped the scene. Then, with the help of family and friends, he dismantled the collapsed deck and loaded the debris onto a truck. The debris was later hauled away and burned. This Court held that under the particular facts of the case, the spoliation-of-evidence doctrine did not apply. Id. at 413. This Court reasoned that the doctrine did not apply because the condition of the deck after it had collapsed was immaterial to the guests' claims. The relevant issue was the Chandlers' knowledge of the condition of the deckbefore it collapsed, and the condition of the deck before it collapsed was evidenced by an independent home inspector's report. Because the record contained no evidence indicating that the Chandlers had attempted to alter the inspection report or had asked the inspector to alter either the report or his testimony, *Page 503 
this Court concluded that there was an insufficient foundation for the spoliation-of-evidence doctrine. Id.
In Chandler, this Court distinguished two other cases involving spoliation of evidence, May v. Moore, 424 So.2d 596
(Ala. 1982), and Campbell v. Williams, 638 So.2d 804 (Ala. 1994). This Court pointed out that in May and Campbell, both medical-malpractice cases, the plaintiffs presented evidence indicating that the defendant physicians had attempted to alter medical records to make them more favorable to the physicians. Unlike the defendant physicians in May and Campbell, Kenneth Chandler did not attempt to alter any material evidence. Instead, he recorded the physical appearance of the collapsed deck; thus, there was other evidence available to prove the condition of the deck before it collapsed.
In this case, the only purpose for which the Murrays needed to examine the surge arrester after the power surge occurred was to prove that it was not defective. However, the Murrays did not need to prove that the surge arrester was not defective in order to prove their theory of negligence against APCo which was premised on the allegation that APCo had failed to install an adequate number of surge arresters. Moreover, APCo did not assert an affirmative defense that a third party had negligently provided it with a defective surge arrester. Additionally, the fact sought to be proved by examination of the surge arrester — that a power surge had passed through it — was proved by other evidence. APCo admitted facts showing that the surge arrester was burned, that it had conducted electricity, that the surge arrester was intended to conduct electricity only in the case of a power surge, and that a power surge in excess of 200,000 volts would have burned the surge arrester.
Because the evidence was insufficient to show that APCo purposely and wrongfully destroyed or tampered with material evidence favorable to the Murrays, and because other evidence was available to show a power surge, the trial court improperly gave the spoliation-of-evidence instruction. I therefore dissent.
BROWN, J., concurs.
[1] The deposition testimony of APCo employee Bill Obert was read at trial during the direct examination of another APCo employee, Jeff Roper. I disagree that the jury could reasonably have found from that testimony that APCo purposely and wrongfully destroyed the surge arrester to prevent it from being used as evidence against APCo. Mr. Obert testified:
 "Q. Were you present when the lightning [i.e., surge] arrester was taken down?
"A. I don't remember right offhand. I cannot remember.
 "Q. Did you ever look at the lightning arrester after it had been taken down?
 "A. It seems like, yes, I did. I did see it. That is after it was taken down. I might have been back that afternoon, because, I think, you know, they were still doing some work in the substation.
 "Q. All right. Did you see anything when you looked at the lightning arrester that was abnormal or unusual?
 "A. No. From my recollection, you know, it looked okay."
(R.T. at 92-93.) Mr. Roper testified that the porcelain surge arrester had fallen and shattered as APCo employees were attempting to remove it. (R.T. at 88, 91.)